PETERBOROUGH & SHIRLEY RAILROAD v. CHAMBERLIN.

Where a note is given by one, at the request of another, to a third person, in a suit between the payee and signer it is not essential that there should be shown a consideration between the payee and him at whose request it was made.

ASSUMPSIT upon a promissory note for $850, dated November 24, 1852, signed by the defendant, and payable to the plaintiff, or order, on demand, at the New-Ipswich bank, with interest. Writ dated November 18, 1858. Upon the note was indorsed $500, September 5, 1853. Demand at the bank and nonpayment were proved. The defendant had subscribed for two shares of the original stock of the railroad, and his father, L. Chamberlin, had subscribed for fourteen shares, and was entitled to one share for land damages, but the certificates for the seventeen shares were taken out in the name of the defendant.

The plaintiff introduced evidence tending to show that the certificates were taken out in the defendant's name on account of a fear of individual liability for the debts of the corporation—the father

having and the defendant not having property liable and exposed to attachment. The charter, granted by the legislature July 8, 1846; the by-laws and votes of the corporation, and the votes of the directors, were to be referred to in the argument; and copies of sections 4 and 7 of the charter, copies of records of the corporation, and copies of records of the directors, were made a part of the case.

The plaintiff introduced evidence tending to show that about November 10, 1852, the defendant's father subscribed $850 by signing a subscription paper of which the following is a copy:

"Whereas the Peterborough and Shirley Railroad Company, a corporation duly established by a law of the State of New-Hampshire, is deeply indebted; and whereas we, the subscribers, stockholders in said company, are personally liable for the debts of said company; and whereas it is desirable and necessary that said debts should be paid: Now therefore we, the subscribers, in consideration of our said liability, and for the purpose of raising money to discharge said debts, severally promise and agree to pay said company the sum set against our names respectively, as soon as the sum of $3,500 shall be subscribed for that purpose; and we further agree to assign all the stock in said company that we now own to Jonathan Batchelder, Stephen Smith, and D. F. McGilvray, to be surrendered by them to said company, and canceled or re-assigned to us, as a majority of the directors of said company may order: It being understood that each of us shall be entitled to one share of the stock of said company for every one hundred dollars that we subscribe, upon the payment thereof. September 24, 1852."

The plaintiff also introduced evidence tending to show that when L. Chamberlin signed this paper he said he should want his note and bills which the plaintiff was owing him, paid out of the subscription, and that John M. Maynard, one of the committee appointed August 27, 1852, told him they should be so paid.

The plaintiff also introduced evidence tending to show that the committee circulated several subscription papers like the one signed by L. Chamberlin, and procured subscriptions upon them; that the treasurer of the company had a copy of the subscription, upon which were copied all the names of the signers of the several papers, and that when the signers settled their subscriptions the treasurer marked his copy with an X at the end of their names, and an X between their christian and their surnames.

The plaintiff introduced evidence tending to show that, November 24, 1852, Maynard received from George Barrett, treasurer of the company, a receipt, of which the following is a copy:

[No.] New-Ipswich, November, 1852. Received of James L. Chamberlin eight hundred and fifty dollars; it being the amount of said Chamberlin's subscription to new stock of Peterborough and Shirley Railroad Company, N. H., due November 15, 1852, for which the bearer is entitled to eight and one half shares of new stock.                         George Barrett, Treasurer;

That Maynard went to the defendant with this receipt, and a blank note running to the company; that the defendant asked him how they got along with the subscription; that he answered very

well, and that his father, L. Chamberlin, had told him to call, and the defendant would settle his father's subscription; that he presented the receipt and blank note to the defendant, who asked, Will our claims against the company be allowed on the note; that Maynard replied in the affirmative; that the defendant signed the note in suit, gave it to Maynard, and took the receipt; that Maynard carried the note to the office of the company, and delivered it to Barrett, the treasurer, who marked the copy of L. Chamberlin's name on the copy of the subscription paper which the treasurer had, as he marked the name of others when they settled their subscriptions; thus, " L. x Chamberlin, x"; and that the note remained in the possession of the treasurer.

No new or preferred stock was ever issued or called for by the defendant or any of the subscribers.

The plaintiff introduced evidence tending to show that September 5, 1853, the defendant called on the treasurer, and proposed indorsing on the note in suit the amount of a note and account which his father had against the company; that that amount ($500), was so indorsed by the treasurer, at the defendant's request; that the defendant gave up to the treasurer the note which his father held against the company, and also the account receipted by his father, and that the defendant then told the treasurer he would settle the balance due on his note in a short time.

The plaintiff also introduced a writ in an action Otis Wright v. James Taft, Daniel Felch and Simeon Cragin, dated September 16, 1852, served the same day, and entered the fourth Tuesday of October, 1850. The declaration was upon the individual liability of the defendants for debts of the company. November term, 1855, by agreement of parties, judgment was rendered for the defendants for the costs, to be taxed by the clerk of the courts. The plaintiff proposed to prove that less than twelve hundred shares of the original stock were subscribed for upon which assessments had been made; that all the money paid in on the subscription to the original stock had been expended in constructing the road, August 9, 1852; that the company at that time were largely indebted and insolvent, and that its debts were contracted in the construction of the road; that the committee, appointed August 27, 1852, procured $39,000 to be subscribed upon papers like that which L. Chamberlin signed; that they collected nearly that amount, and paid out the same in satisfaction of said debts; that the committee, relying upon the note in suit, paid the amount due on it out of their own funds, on said debts; that all said debts have been partly paid and wholly discharged and released, and that no action was commenced against the stockholders under the private liability law, after September 24, 1852.

The court ordered a verdict for the defendant; the plaintiff excepted, and the questions were transferred.

*Morrison & Stanley,* for the plaintiffs.

The only material question raised in this case is, Was there a sufficient consideration for the note in suit? Upon this point the

plaintiff maintains the following positions, and claims that they are decisive of the case:

1. The subscription paper signed by Loammi Chamberlin was a valid, binding promise, and was a sufficient consideration for a note given in settlement and discharge thereof. *George* v. *Harris*, 4 N.H. 533; *Cong. Society* v. *Goddard*, 7 N. H. 430; *Bryant* v. *Goodnow*, 5 Pick. 228; *Trustees* v. *Stetson*, 5 Pick. 506; *Trustees* v. *Cowles*, 6 Pick. 427; *Trustees* v. *Danforth*, 12 Pick. 541; *Fisher* v. *Ellis*, 3 Pick. 322; *Thomas* v. *Larkin*, 12 Mass. 190; *Trustees* v. *Allen*, 14 Mass. 172; *McAuley* v. *Billinger*, 20 Johns. 89.

In *Cong. Society* v. *Goddard*, 7 N. H. 430, are many authorities cited; and the court consider the point as quite clear.

Loammi Chamberlin's subscription being valid and binding upon him, and being confirmed by his request to the defendant to pay or settle it, the discharge of that subscription was a good and sufficient consideration for the note in suit.

2. But whether Loammi Chamberlin's subscription was valid or not; whether the conditions upon which it was made were complied with or not; the discharge of it by the defendant, at the request of Loammi Chamberlin, was a sufficient and adequate consideration for the note as against the defendant, taking into account the circumstances under which it was given, as disclosed by the case. *Horn* v. *Fuller*, 6 N. H. 511, and cases and authorities there cited. It is there held that when a note is given by one man, at the request of another, to a third person, it is not essential to the validity of the note that there should have been a consideration as between him at whose request it was made, and the payee, even in a suit between maker and payee. *Horn* v. *Fuller*, 6 N. H. 511, before cited.

*Sawyer & Stevens*, for the defendant, to show that the note was not founded on a sufficient consideration, referred to *May* v. *Coffin*, 4 Mass. 347; *Warder* v. *Tucker*, 7 Mass. 449; *Cabot* v. *Haskins*, 3 Pick. 83; *Lang* v. *Johnson*, 24 N. H. 302; *Haynes* v. *Thom*, 28 N. H. 386.

NESMITH, J.   The facts admitted or proved in this case show that the defendant gave the note in suit at the request of his father, Loammi Chamberlin. It is not essential to the validity of the note that there should have been a consideration therefor, as between the father and the payee of the note.

The discharge of the subscription by the defendant, at the father's request, constituted a good and adequate consideration for the note, so far as the defendant is concerned; and if he has suffered he is to look to the father for his indemnity.

Under the circumstances of the case the son is presumed to have funds in his hands to indemnify him before signing at his father's request. The defendant is not at liberty to dispute whether there be a consideration between the plaintiffs and his father. *Nickerson* v. *Hayward*, 19 Johns. 113; *Horn* v. *Fuller*, 6 N. H. 512. It is not essential to consider the other parts of the case. The verdict must, therefore, be set aside, and a

*New trial granted.*